**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie Dee Bjork, ) | No. CV 15-362-TUC-LAB |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 14)

The court finds that the ALJ's determination of Bjork's disability onset date is supported by substantial evidence and free from legal error.

PROCEDURAL HISTORY

On October 13, 2011, Bjork filed for disability insurance benefits pursuant to Title II of the Social Security Act and supplemental security income pursuant to Title XVI. (Tr. 108-109) She alleged disability beginning on March 1, 2010, due to "back injury" and "scoliosis." (Tr. 14, 263) Her claims were denied initially (Tr. 110-114; 115-122) and upon reconsideration (Tr. 123-127, 128-132). Bjork requested review and appeared with counsel at a hearing before

1  Administrative Law Judge (ALJ) Norman R. Buls on October 2, 2013. (Tr. 14-22) In his
2  decision, dated February 12, 2014, the ALJ found Bjork was disabled as of October 13, 2011,
3  her application date. (Tr. 14-22) Because Bjork's last insured date was March 31, 2011, her
4  Title II application was denied, but her Title XVI application was granted.

Bjork appealed and submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5) Bjork subsequently filed this action appealing that final decision. (Doc. 1) She argues the case should be remanded because "there is no 'legitimate medical basis' in the record for the ALJ's assigned [disability] onset date." (Doc. 17, p. 4)

Claimant's Work History and Medical History

Between November of 2009 and February of 2010, Bjork worked as a cashier/stockroom worker at Citi Trends. (Tr. 281) On December 26, 2009, she twisted her back placing a box of sensor tags on a pulley. (Tr. 40, 47, 328)

Bjork was treated by Anthony E. Perrotti, D.O. for her work-related back injury. (Tr. 328) Treatment began on January 2, 2010. (Tr. 361, 328) Bjork's diagnosis was "sprain lumbar region, sprain thoracic region." (Tr. 327) X-ray studies on January 5, 2010 revealed "normal thoracic spine; incidentally noted is mild dextroconvex scoliosis of the thoracolumbar spine." (Tr. 337) (punctuation modified) Treatment concluded on January 28, 2010 when Bjork was released with no functional limitations. (Tr. 361, 328)

Bjork testified at the hearing that she was later fired from Citi Trends because her employer refused to allow her to work part-time. (Tr. 42-43)

Bjork's last insured date for Title II purposes was March 31, 2011. (Tr. 14)

From May of 2011 to August of 2011, Bjork worked at the Majestic Gardens condominiums performing janitorial and maintenance work for 20 hours per week. (Tr. 40, 253-254, 281, 282) She picked up the mail and did some filing. (Tr. 54) She watered the plants. *Id*. She picked up garbage and palm fronds, cleaned the pool areas and restrooms, and mopped the floors. (Tr. 282) During this period, Bjork received workmens' compensation

1 benefits and held herself out as able to work. (Tr. 42) Bjork reported that she exacerbated her
2 back pain in August of 2011. (Tr. 488)

3       Bjork was examined on November 16, 2011 by Stanford A. Williamson, D.O., for the
4 disability determination services. (Tr. 488-490) Williamson diagnosed "chronic low back pain,
5 with signs of left sacroiliac joint involvement." (Tr. 490) X-ray studies of Bjork's spine were
6 taken on November 17, 2011. (Tr. 494) David Frank, M.D., found "degenerative disc disease
7 at the L3-4 level; Mild scoliosis of the lower lumbar spine." *Id*.

8       MRI studies of Bjork's spine were taken on July 12, 2013 by Karl Nguyen, M.D. (Tr.
9 532) Nguyen diagnosed "nonlateralizing disc protrusion at L5-S1 without central spinal canal
10 or neural foraminal stenosis; multilevel facet hypertrophy, facet joint arthrosis . . . [and] disc
11 desiccation." *Id*.

12       At the hearing on October 2, 2013, Bjork testified that she takes over-the-counter Aleve
13 six times per day for pain. (Tr. 49) She also takes Celexa for depression, which helps "a lot."
14 (Tr. 50) She testified that her depression makes her "unsociable" at work. (Tr. 50)

15       Bjork testified that she can lift a gallon of water, but it causes her pain. (Tr. 51) She can
16 sit for a minute or two and stand for three or four minutes before she has to move around. (Tr.
17 51-52) She can walk for half a block. (Tr. 53) On a typical day, she lays on her back and
18 listens to the radio. (Tr. 53) She heats almonds in the microwave and eats yogurt. *Id*. She goes
19 to the library "once in a while." *Id*. She goes shopping for groceries once a month. *Id*.

20       Bjork was examined on December 7, 2013 by Robert Bradley Barlow, M.D., (Tr. 598-
21 601) Barlow diagnosed "severe low back and neck pain from prior trauma." (Tr. 598) He
22 opined Bjork could lift 10 pounds occasionally and less than 10 pounds frequently. (Tr. 598)
23 She could sit, stand, and/or walk for 2 hours in an 8-hour day. (Tr. 599) She should never
24 climb, stoop, kneel, crouch, or crawl. (Tr. 600) Barlow's opinion suggests Bjork can perform
25 some sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

27 CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 4 -

1  other substantial gainful work in the national economy in view of claimant's age, education, and
2  work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

3       In determining whether the claimant retains the ability to perform other work, the ALJ
4  may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20
5  C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846
6  F.2d 573, 576-577 (9th Cir. 1988). The grids calculate whether or not the claimant is disabled
7  based on the claimant's exertional ability, age, education, and work experience. *Tackett v.*
8  *Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids are a valid basis for denying claims where
9  they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02.

11     <u>The ALJ's Findings</u>

12       At step one of the disability analysis, the ALJ found Bjork "has not engaged in
13  substantial gainful activity since the alleged onset date [March 1, 2010]." (Tr. 16-17) At step
14  two, he found Bjork "has had following severe impairment: degenerative disc disease." (Tr. 17)

15       At step three, the ALJ found Bjork's impairment did not meet or equal the criteria for any
16  impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404.
17  (Tr. 17)

18       The ALJ then analyzed Bjork's residual functional capacity (RFC). He found "that prior
19  to October 13, 2011 . . . the claimant had the residual functional capacity to perform light work
20  as defined in 20 CFR 404.1567(b) and 416.967(b)." (Tr. 17) After October 13, 2011, Bjork
21  had the capacity to perform only sedentary work. (Tr. 19)

22       At step four, the ALJ found Bjork was unable to perform her past relevant work as a
23  recreation worker because that job was light work and Bjork can no longer perform light work.
24  (Tr. 20) At step five, the ALJ used the grids to determine whether Bjork could make the
25  adjustment to other work in the national economy. After considering her age, education, work
26  experience, and residual functional capacity, he determined that Bjork was disabled as of her
27  application date, October 13, 2011. (Tr. 21, 38) Finally, the ALJ found that Bjork was not

disabled at any time prior to March 31, 2011, her last insured date for Title II purposes. (Tr. 21) Consequently, her Title II application was denied, but her Title XVI application was granted.

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

DISCUSSION

Bjork maintains the case must be remanded because "there is no 'legitimate medical basis' in the record for the ALJ's assigned [disability] onset date." (Doc. 17, p. 4) Specifically, she argues the ALJ failed to heed agency policy as set forth in Social Security Ruling 83-20, which explains that the disability onset date is generally determined "based on factors such as

the claimant's allegations, work history, and medical records." (Doc. 17, p. 5) The court finds to the contrary that the ALJ's determination of Bjork's disability onset date is supported by substantial evidence and free from legal error.

The court considers in turn Bjork's two applications: the first for disability insurance benefits pursuant to Title II of the Social Security Act and the second for supplemental security income pursuant to Title XVI.

To qualify for Title II benefits, Bjork had to prove disability prior to her last insured date of March 31, 2011. 42 U.S.C. 423(a)(1)(A); *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991) . Her argument that the case must be remanded for reevaluation of her disability onset date has merit only if there is evidence in the record from which one could find an onset date at least as early as March 31, 2011, her last insured date. If not, then remand would be pointless. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard).

Here, there is nothing in the record, aside from the subjective testimony of the claimant, to prove that she was disabled prior to March 31, 2011. The claimant's subjective testimony, by itself, is insufficient. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking.") (punctuation modified).

Bjork injured her back in December of 2009, but she received medical treatment from Anthony E. Perrotti, D.O. and was released with no functional limitations on January 28, 2010. (Tr. 361, 328) There is no other medical evidence in the record indicating disability prior to Bjork's last insured date. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

From May of 2011 to August of 2011, Bjork worked at the Majestic Gardens condominiums performing janitorial and maintenance work indicating an ability to work after her last insured date. (Tr. 40, 281) During this period, Bjork received workmens' compensation benefits and held herself out as able to work. (Tr. 42) Bjork correctly observes that receiving

workmens' compensation is not necessarily inconsistent with a claim of disability. Nevertheless, it is a factor that can be considered by the ALJ. (Doc. 17-2, p. 2)

Here, the ALJ concluded that Bjork was not disabled prior to her last insured date based on the lack of medical evidence of disability, and her receipt of unemployment benefits. (Tr. 19) Consequently, he denied Bjork's Title II application. Substantial evidence supports this decision. The court now considers Bjork's Title XVI application.

Title XVI benefits are available to persons who are disabled and meet certain income thresholds. 20 C.F.R. § 416.202 Title XVI benefits ordinarily begin the month after the month all requirements for eligibility are met. 20 C.F.R. § 416.330 Benefits begin at the earliest, however, on the month following the month of the application regardless of how long the claimant was disabled before the application date. 20 C.F.R. § 416.335 If the disability onset date is determined to be the application date, the claimant receives the maximum benefit possible. There is no particular advantage to having a disability onset date set *prior* to the application date.

In this case, the ALJ gave "substantial weight" to the opinion of the examining physician, Barlow. (Tr. 20) On December 7, 2013, Barlow, opined that Bjork was limited to sedentary work with certain restrictions. (Tr. 598-601) This finding, combined with factors such as Bjork's age and work experience, meant that Bjork was disabled according to the social security grids. (Tr. 20-21) It was reasonable to assume that this disability started at some point before the examination but, as the court explained above, it did not start as early as Bjork's last insured date. Given this range of uncertainty, it was reasonable for the ALJ to choose the Title XVI application date as the disability onset date. This finding gave Bjork the maximum Title XVI benefit that she could receive given her application date.

Moreover, this finding complies with SSR 83-20. This regulation explains that the disability onset date will usually be "based on factors such as the claimant's allegations, work history, and medical records." (Doc. 17, p. 5) In Title XVI cases, however, "[o]nset will be established as of the date of filing provided the individual was disabled on that date." SSR 83-20, 1983 WL 31249, *7 This instruction follows from the fact that Title XVI benefits are not

- 8 -

1 paid for any period of disability prior to the filing date.  The regulation goes on to explain that,
2 "specific medical evidence of the exact onset date need not generally be obtained prior to the
3 application date since there is no retroactivity of payment because [T]itle XVI payments are
4 made beginning with the date of application provided that all conditions of eligibility are met."
5 SSR 83-20, 1983 WL 31249, *7  Substantial evidence supports the ALJ's decision to choose
6 the Title XVI application date as the disability onset date.

7 The court finds the ALJ's determination of Bjork's disability onset date is supported by
8 substantial evidence and free from legal error. *See, e.g., Perkins v. Chater*, 107 F.3d 1290, 1295
9 (7th Cir. 1997) (Although the ALJ granted the claimant's Title XVI application, SSR 83-20 did
10 not require remand to reevaluate the disability onset date because there was insufficient
11 evidence in support of the claimant's Title II application.).   Accordingly,

13 IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED.
14 The Clerk of the Court is instructed to enter judgment accordingly and close this case.

16 DATED this 6th day of July, 2016.

*Leslie A. Bowman*

Leslie A. Bowman
United States Magistrate Judge